Law Offices of Avrum J. Rosen, PLLC
By: Avrum J. Rosen, Esq. (AJR 4016)
     Deborah L. Dobbin, Esq. (DD- 8553)
Attorneys for Appellee
Richard E. O'Connell,
as Chapter 7 Trustee for the
Estate of Niraj Chaturvedi
38 New Street
Huntington, New York 11743
(631) 423-8527


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

NIRAJ CHATURVEDI,                                          Hon. Loretta A. Preska, U.S.D.J.
d/b/a GLOBAL GEM TRADERS, INC.

                              Appellant,                  Civil Case No.   08-cv-00249-LAP

          -against-

RICHARD E. O'CONNELL,                                     **NOTICE OF MOTION**
as Chapter 7 Trustee for the                             **TO DISMISS APPEAL**
Estate of Niraj Chaturvedi

                              Appellee.
-------------------------------------------------------X

     PLEASE TAKE NOTICE, that upon the annexed Affirmation of Avrum J. Rosen, Esq.,

dated February 29, 2008, and the exhibits attached thereto, and upon the Memorandum of Law of

Richard E. O'Connell, as Chapter 7 Trustee for the Estate of Niraj Chaturvedi, in Support of

Appelle's Motion to Dismiss the Appeal of Niraj Chaturvedi d/b/a Global Gem Traders, Inc. (the

"Appellant" or the "Debtor"), the undersigned will move before the Honorable Loretta A. Preska,

United States District Judge, at the United States Courthouse for the Southern District of New

York, located at 500 Pearl Street, New York, New York 10004, for an order (a) pursuant to Rules

8002, 8011, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

dismissing the above-captioned appeal on grounds that Appellant failed to timely file a Notice of

Appeal as required by Bankruptcy Rule 8002, and for such other and further relief as this Court

deems just and proper.

PLEASE TAKE FURTHER NOTICE, that answering papers, if any, must be filed in

accordance with Local Rule 6.1 of the United States District Court for the Southern District of

New York, and the Individual Rules of the Honorable Loretta A. Preska.

Dated: Huntington, New York
February 29, 2008

LAW OFFICES OF AVRUM J. ROSEN, PLLC
Attorneys for Appellant, Richard E. O'Connell,
as Chapter 7 Trustee for the
Estate of Niraj Chaturvedi

By:     /s/ Avrum J. Rosen
Avrum J. Rosen (AJR 4016)
38 New Street
Huntington, New York 11743
(631) 423-8527
ajrlaw@aol.com

TO:

Ira R. Abel, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue
24th Floor
New York, New York 10170
(212) 586-5095
iabel@ctswlaw.com

Law Offices of Avrum J. Rosen, PLLC
By: Avrum J. Rosen, Esq. (AJR 4016)
Attorney for Appellee
Richard E. O'Connell,
as Chapter 7 Trustee for the
Estate of Niraj Chaturvedi
38 New Street
Huntington, New York 11743
(631) 423-8527

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
NIRAJ CHATURVEDI,                                    Judge Loretta A. Preska
d/b/a GLOBAL GEM TRADERS, INC.

                                    Appellant,        Civil Case No.   08-cv-00249-LAP

        -against-

RICHARD E. O'CONNELL,                        **AFFIRMATION IN SUPPORT OF**
as Chapter 7 Trustee for the                 **APPELLANT'S MOTION**
Estate of Niraj Chaturvedi                   **TO DISMISS APPEAL**

                                    Appellee.
--------------------------------------------------------X

        AVRUM J. ROSEN, an attorney duly admitted to practice in the United States District

Court for the Southern District of New York, duly affirms and states as follows:

        1.      I am a partner in the Law Offices of Avrum J. Rosen, attorney for Richard E.

        O'Connell, as Chapter 7 trustee for the Estate of Niraj Chaturvedi d/b/a Global

        Gem Traders, Inc., the Appellee (the "Trustee" or "Appellee") in the instant

        appeal from the Order of the Honorable Prudence Carter Beatty, United States

        Bankruptcy Judge for the Southern District of New York dated and entered on

        November 28, 2007 (the "9019 Order"), a copy of which is annexed hereto as

        "Exhibit A", authorizing the parties pursuant to Fed. R. Bankr. P. 9019(a) and 11

        U.S.C. § 105(a) to enter into and approving a stipulation of settlement and

compromise of claim with Ralph Esmerian and R. Esmerian, Inc. (the "Esmerian Group") including a litigation support agreement.

2.    I submit this Affirmation in support of Appellee's motion for an order dismissing the instant appeal pursuant to Rules 8002, 8011, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the ground that Appellant failed to timely file a Notice of Appeal as required by Bankruptcy Rule 8002.

3.    By Order to Show Cause dated November 20, 2007, the undersigned moved for a hearing on shortened notice for an Order pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a) authorizing the parties to enter into and approving a settlement and compromise of claim with the Esmerian Group including a litigation support agreement.  A copy of the Order to Show Cause, Affidavit pursuant to Local Rule 9077-1, and Application in Support are annexed hereto as "Exhibit B."

4.    The Debtor was timely served with the Order to Show Cause and appeared at the hearing held in connection thereto on November 28, 2007.

## BACKGROUND

5.    What follows is a brief summary of the facts preceding the instant appeal.  On October 26, 2005, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Niraj Chaturvedi and on December 1, 2005, an Order for Relief was entered by the Court.  Richard O'Connell was appointed the Chapter 7 Trustee.

6.    The Trustee was required to bring a Motion for an Order compelling the Debtor to file schedules and appear at a meeting of creditors and on April 4, 2006, the Court

granted the Trustee's Motion to Compel.

7.    Based on the Debtor's failure to comply with the April 4, 2006 Order, the Trustee commenced an adversary proceeding objecting to the Debtor's discharge and on December 11, 2006, a Default Judgment was entered denying the Debtor's Chapter 7 discharge.

8.    By Order dated April 24, 2006, the Debtor was directed to appear at a mandatory meeting of creditors pursuant to 11 U.S.C. § 341 ("341 Meeting") and to file schedules.  When the Debtor failed to file a complete set of schedules, the petitioning creditors were required to file the schedules.

9.    After the Debtor failed to appear at the 341 Meeting in June 2006, the Court entered an Order dated November 6, 2006 directing the Debtor to appear before the Court on December 12, 2006 for the purposes of being examined by the Trustee and for the 341 Meeting of Creditors.

10.    It was not until the U.S. Marshal's Office was directed to bring the Debtor to the December 12, 2006 hearing before the Court, that the Debtor decided to voluntarily submit to a 341 Meeting of Creditors which was held on November 15, 2006.  At the 341 Meeting, the Debtor was directed to file Amended Schedule and on December 14, 2006, the Debtor filed Amended Schedules.

11.    The Trustee repeatedly demanded of the Debtor that he provide documents to support the claims asserted in his Amended Schedules and it was not until many months later that the Debtor provided the Trustee with several boxes of documents that only partially complied with the document demands.

12.    By Order dated May 30, 2007, the Trustee retained Joseph Broderick, CPA, as

accountant, to review the documents provided by the Debtor in support of potential claims made by the Debtor against various parties including the Esmerian Group.

13.    Counsel for the Trustee as well as the accountant met with the Debtor to discuss the alleged claims against the Esmerian Group and other third parties.

14.    Pursuant to 11 U.S.C. § 546(a), the statute of limitations for commencing an action or proceeding under sections 544, 545, 547, 548, or 553 of title 11 of the United States Code, is two years after the entry of the order for relief.  Therefore, the deadline for the Trustee to file complaints was December 1, 2007.

15.    After conducting a thorough investigation of the facts and circumstances relating to actions that could be brought against the Esmerian Group and the respective claims that the Esmerian Group could assert against the Estate, the Trustee determined that it was in the best interests of the Estate to settle any potential disputes without commencing an adversary proceeding.

16.    As such, an Order to Show Cause was brought in an effort to hear and determine, prior to the running of the statute of limitations, whether or not the Court would allow the Trustee to enter into and approve the Settlement Agreement between the Trustee and the Esmerian Group.

17.    In the event that the Court determined that a settlement was not warranted, then the Trustee would be required to commence an adversary proceeding against the Esmerian Group and other third parties prior to the December 1, 2007 deadline.

18.    Based on the Debtor's Amended Schedules, the Debtor claims a 50% interest in merchandise that he arranged to be placed on consignment with third parties.  In

addition, the Debtor asserts that he obtained financing on behalf of the Esmerian

Group and has a partnership/joint venture arrangement with Ralph Esmerian in

the merchandise.

19.    The Esmerian Group claims that they have a 100% interest in the merchandise and

that the Debtor was merely a middleman.  The Settlement Agreement was

prepared to determine the respective interests of the Estate and of the Esmerian

Group in the merchandise to enable the parties to recover a 100% interest in the

merchandise placed on consignment and merchandise given as collateral for

various loans made to the Esmerian Group.

20.    Without the cooperation of the Esmerian Group, the Estate encountered extreme

difficulty based on the lack of documentary evidence substantiating that the

Debtor had any partnership with the Esmerian Group, let alone a 50% interest in

the merchandise placed as collateral for loans given by third parties to the

Esmerian Group.  Additionally, without the cooperation of the Esmerian Group, it

was unlikely that the Estate would succeed in recovering assets and/or monies.

21.    The predicate to commencing the actions to recover the Estate's 100% interest in

the merchandise is the resolution of the issue of ownership and the respective and

otherwise competing claims of the Estate and the Esmerian Group.

22.    For this reason, the Trustee moved for expedited relief to allow the Trustee to

bring a single action for recovery of the goods on behalf of the Estate.

## APPEAL FROM THE BANKRUPTCY COURT ORDER

23.    On December 11, 2007, Appellant filed the Notice of Appeal.  The appeal is

untimely and must be dismissed.

24.     Bankruptcy Rule 8002(a) provides that a Notice of Appeal must be filed within

ten days of the Order appealed from, or, a request to extend the time for filing the

Notice of Appeal must be made by written motion pursuant to Rule 8002(c)(2).  In

the instant case, Appellant failed to timely file a Notice of Appeal and he never

moved to extend the time for filing the Notice of Appeal.

25.     Because the Rule 9019 Order was entered on November 28, 2008, Appellant had

ten days, or until December 9, 2007, to file the Notice of Appeal.  In this case, he

tenth day fell on a Saturday and therefore, giving the Appellant the benefit of the

doubt, the last day to file the Notice of Appeal became Monday December 10,

2007.  Although the Appellant purportedly dated the Notice of Appeal on

December 10, 2007, it was not filed with the Clerk's Office until 1:54 p.m. on

December 11, 2007[1].  A copy of the Notice of Appeal is annexed hereto as

"Exhibit C".

26.     Moreover, the paid receipt issued by the Clerk's Office is dated December 11,

2007.  The date of filing is the date that the fee for filing the Notice of Appeal is

paid.

27.     In his letter to the Court dated February 8, 2008, a copy of which is annexed

hereto as "Exhibit D", counsel for Appellant asserts that the Debtor, who was then

a *pro se* litigant residing 92 miles from the Bankruptcy Court, faxed the Notice of

Appeal to the Bankruptcy Court at 6:47 p.m. on December 10, 2007 because hand

delivery of the Notice of Appeal was "impossible for him." (Exhibit D, page 3,

---

[1]   The Notice of Appeal is deficient under Bankruptcy Rule 8001 (a) in that it fails to contain the names of
all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys.

paragraph 4).  Counsel goes on to say in a footnote that because the Debtor was in Allentown, PA, December 10 can therefore be considered to be a day on which other conditions have made the clerk's office inaccessible.

28.    What counsel omits to mention is that the fax was not sent from Allentown Pennsylvania, but from an office in New York City[2].  A copy of the purported fax transmittal page is annexed hereto as "Exhibit E". The Debtor regardless of where the fax was sent from on December 10, 2007, it was insufficient for purposes of timely filing a Notice of Appeal.

29.    It is respectfully submitted that facsimile transmission to the Bankruptcy Clerk's Office whether after-hours or during normal business hours is not an acceptable means of filing time-sensitive documents with the Clerk of the Court.

30.    As discussed in the Memorandum of Law in Support of Appellee's Motion to Dismiss, Local Bankruptcy Rule for the Southern District of New York 5001-1 prescribes the procedure for after hours filing which does not include filing by facsimile transmission[3].

31.    The Court is respectfully referred to the accompanying Memorandum of Law for a recitation of the relevant law of the Second Circuit wherein a failure to timely file a Notice of Appeal is a jurisdictional defect.

---

[2]  The Debtor provided the Trustee with a copy of the fax log for his purported fax transmission to the Bankruptcy Clerk of the Notice of Appeal.  Ironically the log was generated by Nirvana International, Inc., a creditor of the Estate against whom the Debtor made claims in his Amended Schedules as having an $80,000.00 coin collection that was property of the Estate and against whom the Trustee obtained a Default Judgment in the amount of $80,000.00 plus interest and costs.

[3]  In the February 8, 2008, letter counsel seeks to re-write Bankruptcy Rule 5005 which defines filing by "electronic means."  The Rule was designed to take into consideration the Electronic Case Filing System of online electronic filing.  This definition does not include facsimile transmission.

32.    Because the Notice of Appeal was not filed with the Bankruptcy Court until December 11, 2007, the appeal must be dismissed as the court is without jurisdiction to hear the underlying appeal.

## **CONCLUSION**

33.    Based on the Appellants failure to timely file the Notice of Appeal, it is respectfully requested that this Court grant the instant motion dismissing the appeal and granting such other and further relief as this Court deems just and proper.

Dated:  Huntington, New York
        February 29, 2008

LAW OFFICES OF AVRUM J. ROSEN, PLLC
Attorneys for Appellant, Richard E. O'Connell,
as Chapter 7 Trustee for the
Estate of Niraj Chaturvedi

By:    /s/ Avrum J. Rosen
       Avrum J. Rosen (AJR 4016)
       38 New Street
       Huntington, New York 11743
       (631) 423-8527
       ajrlaw@aol.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN  DISTRICT OF NEW YORK
----------------------------------------------------------X
 In re:                                                    Chapter 7

NIRAJ CHATURVEDI                                           Case No.: 05-60079-pcb
D/B/A GLOBAL GEM TRADERS,

                           Debtor.
----------------------------------------------------------X

## ORDER PURSUANT TO FED. R. BANKR. P. 9019(A) AND 11 U.S.C. SEC. 105(A) AUTHORIZING THE PARTIES TO ENTER INTO AND APPROVING A STIPULATION OF SETTLEMENT AND COMPROMISE OF CLAIM WITH THE ESMERIAN GROUP <u>INCLUDING LITIGATION SUPPORT AGREEMENT</u>

Upon the application of Richard E. O'Connell, Esq., as Chapter 7 Trustee for the Estate of Niraj Chaturvedi d/b/a Global Gem Traders for an order pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. section 105(a) authorizing the parties to enter into and approving a settlement and compromise of claim with the Esmerian Group including litigation support agreement (the "Application"); and the Trustee having moved by Order to Show Cause dated November 20, 2007; and the Application having come to be heard before the Court on the 28th day of November, 2007; and the Application having been duly served upon all parties entitled to notice thereof; and Avrum J. Rosen of the Law Offices of Avrum J. Rosen, counsel for the Trustee and David Wander, Esq. of Wander & Associates, P.C., having appeared in support thereof; and noone having appeared in opposition thereto; it is

**ORDERED**, that the Trustee's Application for an order pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. section 105(a) authorizing the parties to enter into and approving a settlement and compromise of claim with the Esmerian Group including litigation support agreement ("Settlement Agreement") is hereby granted; and it is further

**ORDERED**, that the parties are authorized to enter into the Settlement Agreement; and it

is further

     **ORDERED**, that the Settlement Agreement is hereby approved in its entirety.


Dated: New York, New York
      November  28, 2007

                    <u>/s/ Prudence Carter Beatty</u>
                    Hon. Prudence Carter Beatty
                    United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
  In re:                                                                    Chapter 7

NIRAJ CHATURVEDI                                                     Case No.: 05-60079-pcb
D/B/A GLOBAL GEM TRADERS,

                             Debtor.
-------------------------------------------------------X

### ORDER TO SHOW CAUSE WHY APPLICATION BY TRUSTEE FOR ORDER PURSUANT TO FED. R. BANKR. P. 9019(A) AND 11 U.S.C. SEC. 105(A) AUTHORIZING THE PARTIES TO ENTER INTO AND APPROVING A STIPULATION OF SETTLEMENT AND COMPROMISE OF CLAIM WITH THE ESMERIAN GROUP INCLUDING LITIGATION <u>SUPPORT AGREEMENT SHOULD NOT BE ENTERED</u>

UPON the annexed application ("Application") of Richard E. O'Connell, Esq.,

as Chapter 7 Trustee for the Estate of Niraj Chaturvedi d/b/a Global Gem Traders, by his

attorneys the Law Offices of Avrum J. Rosen for an order pursuant to Fed. R. Bankr. P. 9019(a)

and 11 U.S.C. section 105(a) authorizing the parties to enter into and approving a settlement and

compromise of claim with the Esmerian Group including litigation support agreement, the

Affidavit of Avrum J. Rosen, Esq. pursuant to Local Rule 9077-1 for the United States

Bankruptcy Court for the Southern District of New York in support, and by virtue of the fact that

pursuant to 11 U.S.C. sec. 546(a)(1)(A), December 1, 2007 is the deadline for the Trustee to

commence an action or proceeding under 11 U.S.C. sections 544, 545, 547, 548, or 553;

      NOW, on the motion of the Law Offices of Avrum J. Rosen, it is

      ORDERED that the Debtor, counsel for Ralph Esmerian and R. Esmerian, Inc. (the

"Esmerian Group"), creditors who have timely filed proofs of claim, and the Office of the United

States Trustee for the Southern District of New York, show cause on November 28_, 2007, at

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                   Chapter 7

NIRAJ CHATURVEDI,                                        Case No.: 05-60079-pcb

                              Debtor.
-------------------------------------------------------X

**APPLICATION BY TRUSTEE FOR AN ORDER PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) AND § 105(a) OF THE
BANKRUPTCY CODE AUTHORIZING THE PARTIES TO ENTER INTO AND
APPROVING A SETTLEMENT AND COMPROMISE OF CLAIMS WITH THE
ESMERIAN GROUP INCLUDING LITIGATION SUPPORT AGREEMENT**

To:    Honorable Prudence Carter Beatty
       United States Bankruptcy Judge

       RICHARD E. O'CONNELL, as Chapter 7 Trustee for the Estate of Niraj Chaturvedi

("Trustee"), by his attorneys, the Law Offices of Avrum J. Rosen, as and for his application

for an Order approving a settlement and compromise of claim with Ralph Esmerian and R.

Esmerian, Inc. (the "Esmerian Group") including a litigation support agreement between the

Trustee and the Esmerian Group and granting related relief, pursuant to Federal Rule of

Bankruptcy Procedure ("Bankruptcy Rule") 9019(a), represents and says as follows:

## I.    PRELIMINARY STATEMENT

       1.    The Trustee seeks approval of a proposed Settlement Agreement

annexed hereto as "Exhibit A" with the Esmerian Group that will give the Estate an

opportunity to recover sufficient funds to provide for a 100% distribution with interest to

unsecured creditors.  Without the settlement, there may be no meaningful distribution to

1

NYC/327924.2

creditors. This settlement meets the parameters for Court approval under Bankruptcy Rule 9019(a).

## II. JURISDICTION AND VENUE

2.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1408 *et seq.*

4.    The statutory predicate for the relief requested herein are Bankruptcy Rule 9019(a) and § 105(a) of the Bankruptcy Code.

## III.    BACKGROUND

### A.    The Involuntary Chapter 7 Petition

5.    On October 26, 2005, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Niraj Chaturvedi (the "Debtor"). On December 1, 2005, an Order for Relief was entered by the Court.

6.    Richard O'Connell has been appointed the Chapter 7 Trustee.

7.    On April 4, 2006, the Court signed an Order compelling the Debtor to file schedules and appear at a meeting of creditors.  After the Debtor failed to comply with the Order, the Trustee commenced an adversary proceeding objecting to the Debtor's discharge.  On December 11, 2006, a Default Judgment was signed by the Court, denying the Debtor's discharge.

8.    By Order of the Court dated April 24, 2006, the Debtor was directed to appear at a Section 341 meeting and file schedules.  When the Debtor failed to file a complete set of schedules, the petitioning creditors filed the schedules.  After the Debtor failed to appear

2

at the 341 meeting in June 2006, the Court entered an Order dated November 6, 2006,

directing the Debtor to appear before the Court, on December 12, 2006, for the purposes of

being examined by the Trustee and for the 341 Meeting of creditors.

9.     On November 15, 2006, the Debtor voluntarily submitted to a 341 Meeting of

Creditors.  At the 341 Meeting, the Debtor was directed to file Amended Schedules.

### B.  Amended Schedules by Debtor and Claims against Third Parties Including Esmerian

10.     On December 14, 2006, the debtor filed Amended Schedules with a twenty-

one (21) page Schedule B-Personal Property including a ten (10) page attachment (the

"Attachment"), a copy of which is annexed as Exhibit B.  A preamble to the Attachment

describes the Debtor's occupation in the jewelry business and his relationship with

Esmerian.

> "Debtors principal business was buy and sale [sic] of color
> stones, jewelry, diamonds, antiques, and paintings and other
> precious items (merchandise) in the proprietary name of Global
> Gem Traders.  Global Gem was located at 609 5th Avenue,
> New York, NY.  It was established in or about 1989.  Initially,
> Mr. Ralph Esmerian and R. Esmerian Inc., at 610 5th Avenue,
> New York, NY 10017 (hereinafter known as "Esmerian")
> bought merchandise from the Debtor.  This continued
> approximately two years [sic].
>
> Later, Esmerian informed Debtor that he had two big robberies
> and he is in a financial crunch due to lots of creditors.  He also
> informed Debtor that he owes large sums of monies to
> Sotheby's located at 1334 York Avenue, New York, NY 10021
> and Christie's Inc. at 20 Rockefeller Plaza, New York, NY
> 10020.  He also informed Debtor that he owes money to family
> trust.  He suggested that since Debtor has good relationship
> and credit in the Diamond market, Debtor should help him out
> in borrowing monies to pay off certain of his creditors [sic].
>
> In consideration thereof, Esmerian agreed and promised to

3

give Debtor partnership/joint venture and/or 50% ownership interest in the merchandise placed as collateral security with various creditors, including but not limited to, Fine Emerald (Aleks Paul), Joseph Chai, Affordable Gems, Gordon Brothers Corporation and Simplexdiam. A list of merchandise placed as collateral security with Gordon Brothers Corporation and Simplexdiam is annexed hereto and is made a part hereof containing two pages. A list of merchandise placed as collateral security with Fine Emerald is annexed hereto and is made a part hereof containing one page. Relying upon said agreement and promise, Debtor obtained loans from following entities: *[sic]."*

*Amended Schedules, p. 4.*

11.    The Attachment then lists nine (9) separate claims against various third parties and, according to the Amended Schedules, the Debtor's assets exceed thirty million ($30,000,000) dollars. Many of the alleged claims are against Ralph Esmerian and R. Esmerian Inc. (together "Esmerian"). Additional claims relate to Fine Emerald and Aleks Paul, among others.

12.    The claims against Esmerian include: (i) Claim #1 - claims relating to loans by various third parties to Esmerian;[1] (ii) Claim #2 - claims for "reimbursement,"[2] (iii) Claim #3 -

---

[1] According to the Debtor, between 1997 through 2005, 14 entities made loans to Esmerian totaling $28,400,000 "[a]s a result of Debtor's good credit and efforts." *Attachment to Amended Schedules at p. 5.* According to the Debtor, this entitled him to a 50% ownership interest in the merchandise placed by Esmerian as collateral security, or some type of "partnership/joint venture" with Esmerian. *Amended Schedules at p. 6.*

[2] According to the Debtor, in connection with the loans discussed in Claim #1, Esmerian "paid off Christie's, Sotheby's and other creditors and purchased new merchandise" but did not pay principal or interest to the creditors who made the loans. According to the Debtor, between 1997 and 2005, he paid $10,500,000 to the creditors who made the loans to Esmerian "for interest and towards principal." *Amended Schedules, p. 6.* Therefore, according to the Debtor, he has a claim for reimbursement of $10,500,000 from Esmerian. *Amended Schedules, Attachment at p. 7.*

4

claims for repayment of loans;[3] (iv) Claim #4 - claims to recover Debtor's merchandise in possession of Esmerian;[4] (v) Claim #6 -- claims against Esmerian and Aleks Paul for merchandise financed by the Debtor;[5] and (vi) Claim #7 - claims for partnership/joint venture and/or 50% ownership interest in certain merchandise.[6] In addition, Claim #8 -- claims against Mitchell May, Esq. and/or Sheldon May & Associates, P.C. for diamonds held by them involves claims against attorneys associated with Esmerian.[7]

13.    After the Amended Schedules were filed, the Trustee retained an accountant, Joseph Broderick, CPA, by Order of the Court dated May 30, 2007, to review documents provided by the Debtor in support of potential claims made by the Debtor against various parties including Esmerian.

---

[3] According to the Debtor, between 1997 through 2005, he made loans to Esmerian in the approximate amount of $12,000,000.

[4] According to the Debtor, between 1997 and 2005, he bought certain merchandise having an aggregate value of $3,113,000 including: (i) merchandise from dealers and auction houses having a value of $1,070,000 which he gave to Esmerian "to sell in the market" but which Esmerian, instead, used as collateral with various creditors; (ii) merchandise from Christie's valued at $1,293,000; and (iii) merchandise from Sotheby's valued at $$750,000. According to the Debtor, Esmerian took all of this merchandise from him. *Amended Schedules, at p. 8-9.*

[5] According to the Debtor, between 1998 and 2003, he financed certain merchandise which Esmerian gave to Mark Emanual who, in turn without Debtor's consent, gave such merchandise to Aleks Paul. According to the Debtor, he does not have a list of this merchandise and he states that Esmerian has the list. *Amended Schedules, at p. 11.*

[6] According to the Debtor, between 2000 through 2002, Esmerian purchased certain merchandise valued at $975,000 but could not pay for it and, as a result, he offered the Debtor a "partnership/joint venture and/or 50% ownership interest in the merchandise and/or value and profits thereof" if the Debtor paid $975,000. *Amended Schedules, at p. 12.*

[7] According to the Debtor, Mitchel May, Esq. of the law firm Sheldon May & Associates, P.C. received two items of jewelry valued at $175,000 which belonged to the Debtor and he refused to pay for or return them. *Amended Schedules at p. 12-13.*

NYC/327924.2

14.     The Trustee's attorneys have met with the Debtor and discussed his alleged claims against Esmerian and other third parties.

15.     The Trustee's attorneys have also discussed the Debtor's claims with Esmerian's attorney and they engaged in an informal exchange of documents and information. While Esmerian admits the Debtor assisted Esmerian in obtaining loans from various third parties whom the Debtor knew in the jewelry business, Esmerian denies (i) receiving any loans from the Debtor; (ii) having the Debtor use his own funds to make any payments to Esmerian's creditors; (iii) agreeing to give the Debtor a 50% ownership interest in any merchandise owned or pledged by Esmerian; (iv) entering into any partnership or joint venture with the Debtor or treating him as a partner or joint venturer; (v) owing any money or jewelry to the Debtor or (vi) having possession of any jewelry belonging to the Debtor.

16.     Esmerian claims that various merchandise was given by Esmerian to certain third parties, including Fine Emerald and Aleks Paul, as collateral for loans they made to Esmerian. Esmerian claims 100% ownership of such merchandise and disputes the Debtor's claims of any ownership interest in such merchandise. Esmerian also claims the Debtor owes Esmerian millions of dollars and that there is no debt owing by Esmerian to the Debtor. Esmerian's counsel has provided the Trustee with a detailed, written response to all of the Debtor's purported claims, along with certain documentary evidence supporting Esmerian's position.

17.     The Trustee's attorneys have conducted an extensive investigation into the Debtor's claims against Esmerian and other third parties as set forth in the Amended

6

Schedules. The Trustee has, to date, been unable to locate any written agreement or other competent evidence to support the Debtor's claims of a partnership or joint venture with Esmerian or any agreement by Esmerian to give the Debtor a 50% interest in merchandise pledged by Esmerian as collateral for loans he obtained through the Debtor's contacts in the jewelry business. In addition to the lack of any written agreement, the Trustee has found no evidence of any sharing of profits and losses between the Debtor and Esmerian as would be expected if they were partners or joint venturers.[8] There is no evidence of the parties' joint control and management of a business and there also does not appear to be any evidence that Esmerian treated the Debtor as a partner. Moreover, the Debtor does not appear to have had sufficient funds of his own to make the payments he claims to have made to Esmerian's creditors for Esmerian's benefit or to have purchased the merchandise he claims to have purchased and then given to Esmerian.

18.    Nonetheless, there is no issue that the Debtor had an extensive business relationship with Esmerian which included the purchase and sale of jewelry and other merchandise worth millions of dollars.

19.    According to Esmerian, from time to time Esmerian gave the Debtor funds to purchase for Esmerian various merchandise from auction houses, including Sotheby's and Christie's, or from other third parties. In addition, Esmerian gave the Debtor merchandise to be used as collateral for loans to Esmerian from various third parties with whom the Debtor had a prior business relationship, and the Debtor delivered such collateral to

---

[8] Esmerian has stated, however, that the Debtor was entitled to receive certain compensation from the sale of various merchandise if the sale price exceeded a certain set amount.

NYC/327924.2

Esmerian's lenders.  The Debtor also acted as a middleperson for Esmerian in making various repayments of principal and interest to these lenders.

**The Settlement Agreement**

20.    The Trustee and Esmerian (together, the "Parties" and each a "Party") wish to avoid the expense and delay of litigation and to settle their claims against each other and claims to ownership of merchandise in the possession of various third parties, as well as any and all other claims or obligations that were or could be asserted by either of the Parties against each other, up to and including the date of this Stipulation.[9]

21.    The Trustee and Esmerian, by their attorneys, have engaged in extensive settlement negotiations to resolve the Debtor's claims against Esmerian and the Debtor's claims to certain merchandise in the possession of various third parties that Esmerian claims to own.  These negotiations have culminated in a proposed Settlement Agreement, a copy of which is annexed as Exhibit B.

22.    The principal terms of the proposed settlement are:

a.    The Trustee shall commence adversary proceedings against various third parties who received merchandise from Esmerian and/or the Debtor and to which Esmerian claims 100% ownership subject to claims by the Debtor, including Fine Emerald and Aleks Paul.   The Trustee shall assert all of the Debtor's claims against such entities along with Esmerian's claims against them.

---

[9] The claims against Esmerian will also be deemed to include the Debtor's alleged claims against the attorneys affiliated with Esmerian, Mitchell May, Esq. and Sheldon May & Associates, P.C. The Trustee has investigated these claims and found no support for them other than the Debtor's statements.  Esmerian and these attorneys are referred to as the "Esmerian Group."

8

b.    Esmerian shall fund this litigation by escrowing $50,000 in an account maintained by Esmerian's attorney, to cover anticipated legal fees and expenses by the Trustee's attorneys in prosecuting this litigation.  Esmerian shall also pay up to an additional $50,000 in legal fees and expenses incurred by the Trustee pursuing this litigation, all upon proper application to this Court for compensation pursuant to §§ 330 and/or 331 of the Bankruptcy Code.[10]

c.    Any recovery by the Trustee whether by settlement, judgment or otherwise, shall first be applied to pay any additional legal fees and expenses incurred by the Trustee in such litigation, and then to reimburse Esmerian for any legal fees and expenses it has paid to the Trustee's attorneys to fund this litigation.

d.    Debtor's estate shall receive twenty-five (25%) percent of all remaining funds recovered, subject to a cap based upon the amount of funds needed to make a 100% distribution plus interest, excluding any claim or interest, direct or indirect, by the Debtor, after taking into account all other funds recovered by the estate  (the "Allowed Claims Cap"). Esmerian shall receive seventy-five (75%) percent of all remaining funds recovered plus 100% above the Allowed Claims Cap.  The intention of the parties is for the estate to be able to pay all allowed claims in full but without any surplus funds being distributed to the Debtor.[11]

---

[10] Esmerian may, at its discretion, agree to pay legal fees in addition to the $100,000 incurred by the Trustee's attorneys in prosecuting such litigation.

[11] For purposes of the contemplated litigation, Esmerian shall be deemed to have assigned to the Debtor's estate a 25% interest in any merchandise of Esmerian delivered to the defendants.

9

NYC/327924.2

e.    Esmerian shall agree to waive any and all claims it may have against the Estate.

23.    The Settlement Agreement contains additional terms relating to the prosecution of the litigation, including notice to Esmerian of all pleadings, motions, settlement negotiations, proposed settlements and other developments; monthly notice to Esmerian of all fees and expenses incurred by the Trustee's attorneys along with an opportunity to object to such fees if such objection is deemed warranted by Esmerian.  The Trustee's attorneys shall maintain separate records for the fees and expense incurred in connection with the litigation funded by Esmerian.  The Trustee anticipates working closely with Esmerian's counsel in connection with this litigation and will likely require Esmerian's cooperation in providing documentary evidence and testimony to support the estate's claims.

24.    Esmerian has provided the Trustee with information relating to merchandise delivered to Fine Emerald having a value in excess of five million dollars ($5,000,000) and merchandise delivered to Aleks Paul having a value in excess of eight million dollars ($8,000,000).

## V. LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS

25.    Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 130 (1939).  The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in

10

accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.*, 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

26.    Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides:

> On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the Debtor, and indenture trustee as provided in Rule 2002, and to any other entity as the court may direct.

27.    Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by case law, focusing upon whether the purported settlement is reasonable and in the best interests of creditors. In *Anderson,* 390 U.S. at 414, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expenses and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

11

*Id.*

28.    The United States Court of Appeals for the Second Circuit has stated that the responsibility of the judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993).    The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

29.    In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] . . . an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied Down Products,* 150 B.R. at 522-23.    In *Carla Leather,* the Court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcomes in litigation, as well as the avoidance of wasteful litigation expense, lay behind the Congressional infusion of a power to compromise . . . This could hardly be achieved if the test n hearing for approval meant establishing success or failure to a certainty.

*Carla Leather,* 44 B.R. at 470; *see also Purofield Down Products,* 150 B.R. at 522-23.

12

30.    In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972). *See also In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991). In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444. The settlement evaluation process is not designed to substitute the court's judgment for that of the trustee. *Carla Leather,* 44 B.R. at 465. While a court is not expected to "rubber stamp" the trustee's proposed settlement, *In re Ionosphere Clubs Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a trustee's informed judgment that a compromise is fair and equitable. *Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423; *Drexel Burnham Lambert,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As stated by the district court in *International Distribution Centers,* the court should give weight to the support of not only the trustee but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Thus, a court should consider both the proponents' opinions and independently evaluate the arguments both for and against the settlement to determine whether the settlement should be approved. *Purofied Down Products,* 150 B.R. at 523.

31.    The court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Products,* 150 B.R. at 523; *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988).   The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant,* 699 F.2d at 613-14; *Newman v. Stein,* 464 F.2d at 693; *Purofied Down Products,* 150 B.R. at 523-24.   This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion. *Newman v. Stein,* 464 F.2d at 693. Thus, a court should not insist upon the best possible settlement, but only that a settlement is within the range of reasonableness.

32.    In deciding whether a settlement should be approved, courts in the Second Circuit have considered some or all of the following factors:

1.    the relative benefits to be received by creditors under the proposed settlement;

2.    the likelihood of success in the litigation compared to the present and future benefits conferred by the proposed settlement;

3.    the prospect of complex and protracted litigation if settlement is not approved;

4.    the attendant expenses, inconvenience and delay of litigation;

5.    the probable difficulties of collecting on any judgment that might be obtained;

6.    the competency and experience of counsel who support the proposed settlement;

7.    the extent to which the settlement is the product of arm's length bargaining; and not the product of fraud or collusion;

8.    the nature and breadth of any releases to be issued as a result of the proposed settlement; and

9.    the paramount interest of the creditors and proper deference to their reasonable views.

See *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Ionosphere Clubs* 156 B.R. at 414; *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel Burnham Lambert,* 134 B.R. at 497; *Crowthers McCall,* 120 B.R. at 287; *Texaco,* 84 B.R. at 901; *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44 B.R. at 466. *See 10 Collier on Bankruptcy,* §9019.02 (15th Ed. Revised 1998).

33.    In summary, the "very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Newman v. Stein,* 464 F.2d at 692.

## VI. ANALYSIS

34.    The Settlement Agreement is clearly in the best interests of the estate and meets the requirements for Court approval under Bankruptcy Rule 9019(a).

35.    The Settlement Agreement gives the estate the opportunity to recover sufficient funds to pay unsecured creditors 100% of allowed claims with interest. There may be in excess of thirteen million dollars ($13,000,000) in jewelry and other valuable merchandise delivered to various parties that can be recovered by the Trustee or the value thereof. The total amount of unsecured claims filed in the case are approximately two million five hundred thousand ($2,500,000). Therefore, with a net recovery of 25% after legal fees, there could be a 100% distribution in this case.

NYC/327924.2

36.     An additional benefit is that a third-party, Esmerian, will fund the estimate cost of the Estate's litigation and will waive any and all claims against the Estate.

37.     The likelihood of success in pursuing the Debtor's alleged claims against Esmerian is very slim.  As discussed above, there is little, if any, documentary evidence to support the Debtor's claim.  There also are obvious problems with the Debtor's credibility.

38.     In addition to the dim prospects of any litigation against Esmerian, without the settlement the estate may also lose the prospect of any recovery from millions of dollars in jewelry and other valuable merchandise in the possession of various third parties.  Also, without the settlement, the estate would end up filing complaints against various third parties while Esmerian would likely sue the same parties in state court after seeking relief from the automatic stay, if necessary, or otherwise seeking a declaratory judgment from this Court that the merchandise at issue is not property of the estate.  In such event, the resources of the estate would be wasted in litigation with Esmerian instead of the parties in possession of the valuable property.  Thus, a 25% net recovery from the proposed litigation against various third parties, is very likely to result in a better recovery to the estate than if the estate litigated against Esmerian and also litigated against other third parties without the Esmerian litigation support agreement.

39.     By the proposed settlement, Esmerian also recognizes the benefit of settling its disputes with the Debtor and working together with the Trustee to recover valuable property in the possession of third parties, rather than litigating with the Trustee regarding Esmerian's claim of a 100% interest in all of the property in dispute.

NYC/327924.2

40.    The proposed settlement is the product of arm's length bargaining; and not the product of fraud or collusion.

41.    The Trustee is moving by Order to Show Cause for the scheduling of a hearing to consider the proposed settlement because the statute of limitations for the Trustee to commence adversary proceedings for the turnover of property of the estate of the estate is November 30, 2007.  The required affidavit for such expedited hearing accompanies this motion.

## VII. LOCAL RULES

42.    .    As this application presents the points and authorities relied on by the Trustee in support of the relief sought, the applicant respectfully requests that this Court waive the requirement of Local Bankruptcy Rule that a separate memorandum of law be submitted in support of this application.

## VIII. CONCLUSION

43.    For all of the reasons set forth herein, the Trustee respectfully requests that this Honorable Court enter an Order authorizing the parties to enter into and approving the Settlement Agreement together with such other and relief that this Court deems just and proper.

Dated:  Huntington, New York
        November 19, 2007

                              The Law Offices of Avrum J. Rosen
                              Attorneys for the Trustee

                              By:  /s/ Avrum J. Rosen
                                   Avrum J. Rosen (AJR4016)

NYC/327924.2

38 New Street
Huntington, New York 11743
(631) 423-8527

NYC/327924.2

THE LAW OFFICES OF AVRUM ROSEN
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq. (AJR-4016)
Deborah Dobbin, Esq.

WANDER & ASSOCIATES, P.C.
641 Lexington Avenue, 21st Floor
New York, New York 10022
(212) 751-9700
David Wander, Esq. (DW#0145)

*Attorneys for R. Esmerian, Inc. and Ralph Esmerian*

*Attorneys for Plaintiff Richard O'Connell,*
*as Chapter 7 Trustee of Estate of Niraj Chaturvedi*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                    :

NIRAJ CHATURVEDI,                    :     Chapter 7

                    Debtor.         :     Case No. 05-60079 (PCB)

                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - -

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Stipulation") is entered into by and among Richard E. O'Connell, as Chapter 7 Trustee (the "Trustee") for the Estate of Niraj Chaturvedi, the debtor in this bankruptcy case ("Chaturvedi"), R. Esmerian, Inc. and Ralph Esmerian (together, "Esmerian"), Mitchell May, Esq. and Sheldon May & Associates, P.C.

**WHEREAS**, on October 26, 2005, an involuntary chapter 7 bankruptcy petition was filed against the debtor; and

**WHEREAS**, on December 1, 2005 an Order for Relief was entered; and

WHEREAS, the Trustee was appointed Chapter 7 Trustee for the bankruptcy estate of Chaturvedi, duly qualified, and has been and now is acting as such Trustee; and

WHEREAS, the Debtor filed amended schedules of assets and liabilities dated December 14, 2006 ("Schedules"), a copy of which is annexed as Exhibit A; and

WHEREAS, according to the Schedules, the Debtor has various claims against Esmerian totaling millions of dollars including, (i) Claim #1 - claims relating to loans by various third parties to Esmerian; (ii) Claim #2 - claims for "reimbursement," (iii) Claim #3 - claims for repayment of loans; (iv) Claim #4 - claims to recover Debtor's merchandise in possession of Esmerian; (v) Claim #6 – claims against Esmerian and Aleks Paul Fine Jewelry (" Alex Paul") for merchandise financed by the Debtor; (vi) Claim #7 - claims for partnership/joint venture and/or 50% ownership interest in certain merchandise;and, in addition, Claim #8 – claims against Mitchell May, Esq. and/or Sheldon May & Associates, P.C. for diamonds held by them, involves claims against attorneys associated with Esmerian; and

WHEREAS, the Debtor also asserted claims against various third parties alleging that they are in possession of property belonging to the Debtor, including merchandise held by Fine Emerald (Claim #5) and Aleks Paul (Claim #6); and

WHEREAS, Esmerian disputes all of the Debtor's claims and denies (i) receiving any loans from the Debtor; (ii) having the Debtor use his own funds to make any payments to Esmerian's creditors; (iii) agreeing to give the Debtor a 50% ownership interest in any merchandise owned or pledged by Esmerian; (iv) entering into any partnership or joint venture with the Debtor or treating him as a partner or joint venturer;

(v) owing any money or jewelry to the Debtor or (vi) having possession of any jewelry belonging to the Debtor; and

**WHEREAS**, Esmerian also (i) claims the Debtor owes Esmerian millions of dollars; (ii) that various merchandise was given by Esmerian to certain third parties, including Fine Emerald and Aleks Paul, as collateral for loans they made to Esmerian; (iii) that Esmerian owns 100% of such merchandise; and (iv) denies the Debtor has any interest in or bona-fide claim to such merchandise; and

**WHEREAS**, the Trustee has conducted an extensive investigation into the Debtor's claims against Esmerian and other third parties as set forth in the Amended Schedules; and

**WHEREAS**, the Trustee and Esmerian, by their attorneys, have engaged in extensive settlement negotiations to resolve the Debtor's claims against Esmerian and the Debtor's claims to certain merchandise in the possession of various third parties that Esmerian claims to own.

**WHEREAS**, the Trustee and Esmerian wish to avoid the expense and delay of litigation and to settle their claims against each other and claims to ownership of merchandise in the possession of various third parties, as well as any and all other claims or obligations that were or could be asserted by either of the Parties against each other, up to and including the date of this Stipulation, pursuant to the terms hereof;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, in consideration of the mutual promises contained in this Stipulation and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, which Stipulation is subject to approval of the Bankruptcy Court without which it shall be null and void, that:

1.   The Trustee shall commence adversary proceedings in the Bankruptcy Court in the Debtor's bankruptcy case against Fine Emerald, Aleks Paul and such other third parties identified by Esmerian as having received Esmerian's merchandise in connection with Esmerian's business relationship with the Debtor, to recover such merchandise or the value thereof.   The Trustee shall assert all of the Debtor's claims against such entities along with Esmerian's claims against them.

2.   Esmerian shall fund this litigation by escrowing $50,000 (the "Initial Fee Deposit") in an account maintained by Esmerian's attorney, to cover anticipated legal fees and expenses by the Trustee's attorneys in prosecuting this litigation.  As soon as practicable after a final order is entered by the Court approving this Stipulation, Esmerian shall deliver the Initial Fee Deposit to Wander & Associates, P.C., along with proof of such deposit to the Trustee, and Wander & Associates, P.C. shall maintain the Initial Fee Deposit in a separate escrow account pending further Order of the Court. Esmerian shall also pay up to an additional $50,000 in legal fees and expenses incurred by the Trustee pursuing this litigation, all upon proper application to this Court for compensation pursuant to §§ 330 and/or 331 of the Bankruptcy Code.  Esmerian may, at its discretion, agree to pay legal fees, in addition to the $100,000, incurred by the Trustee's attorneys in prosecuting such litigation.

3.   Any recovery by the Trustee whether by settlement, judgment or otherwise, shall first be applied to pay any additional legal fees and expenses incurred by the Trustee in such litigation, and then to reimburse Esmerian for any legal fees and expenses it has paid to the Trustee's attorneys to fund this litigation.

4.   Debtor's estate shall receive twenty-five (25%) percent of all remaining funds recovered, subject to a cap based upon the amount of funds needed to make a

100% distribution plus interest to all allowed claims in this case, excluding any claim or interest, direct or indirect, by the Debtor, after taking into account all other funds recovered by the estate (the "Allowed Claims Cap"). Esmerian shall receive seventy-five (75%) percent of all remaining funds recovered plus 100% of all remaining funds above the Allowed Claims Cap.

5.    The Trustee shall provide Esmerian with timely notice (and copies) of all pleadings, motions, settlement negotiations, proposed settlements and all other developments in the litigation contemplated by this Stipulation.

6.    The Trustee shall provide Esmerian with copies of all invoices and statements of fees and expenses incurred by the Trustee's attorneys in connection with this litigation, along with the contemporaneous time records maintained by such attorneys, within twenty (20) days after the end of each month for which fees have been incurred. Esmerian may file any objection to such fees and expenses in connection with any application for compensation filed by the Trustee's attorneys, if such objection is deemed warranted by Esmerian. The Trustee's attorneys shall maintain separate time records for the fees incurred in connection with the litigation funded by Esmerian.

7.    Esmarian shall cooperate with the Trustee in connection with the prosecution of the Litigation including producing to the Trustee any relevant documents in Esmerian's possession.

8.    The Parties shall be deemed to have exchanged mutual releases as follows:

a.    the Trustee shall be deemed to have released and forever discharged Ralph Esmerian, R. Esmerian, Inc., Mitchell May, Esq. and Sheldon May & Associates, P.C. and all of their respective successors, heirs, and assigns (the

"Esmerian Released Parties") from all actions, causes of action, suits, debts, dues, sums of money, accounts, controversies, agreements, promises, variances, trespasses, damages, judgments, abstracts of judgments, liens, executions, claims and demands whatsoever, in law, admiralty or equity, which the Trustee or Chaduverdi ever had, now has or hereafter can, shall or may have against the Esmerian Released Parties for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Stipulation, provided, however, that this Stipulation shall not affect, waive, limit, modify or otherwise change in any manner Esmerian's obligations set forth in this Stipulation, or under any instrument or agreement executed and delivered pursuant to this Stipulation, which obligations shall remain in full force and effect.

      b.    The Esmerian Released Parties shall be deemed to have released and forever discharged the Trustee and the Debtor's estate (collectively, "Trustee Parties") from all actions, causes of action, suits, debts, dues, sums of money, accounts, controversies, agreements, promises, variances, trespasses, damages, judgments, abstracts of judgments, liens, executions, claims and demands whatsoever, in law, admiralty or equity, which the Esmerian Released Parties ever had, now has or hereafter can, shall or may have against the Trustee Parties for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Stipulation, provided, however, that this Stipulation shall not affect, waive, limit, modify or otherwise change in any manner the Trustee's obligations set forth in this Stipulation, or under any instrument or agreement executed and delivered pursuant to this Stipulation, which obligations shall remain in full force and effect. Additionally, the

Esmerian Released Parties agree not to file any proof of claim or assert any claims against the Debtor's bankruptcy estate.

9.    This Stipulation and the Payment made hereunder are not intended to be, shall not be construed as, and do not constitute, any admission or concession whatsoever or wrongdoing or illegal or actionable acts or omissions by the Esmerian Released Parties, and the Esmerian Released Parties expressly denies that any of them have engaged in any wrongdoing, or illegal or actionable acts or omissions.

10.    The Parties agree to take any and all necessary and reasonable steps, including the signing of documents, to effectuate this Stipulation of Settlement.

11.    This Stipulation may be signed by the parties in one or more counterparts which, when taken together, shall constitute one and the same original documents.

12.    The Parties agree that the Trustee's time to commence any actions against them are hereby extended until the order approving this Settlement is a Final Order under the Bankruptcy Code.

WANDER & ASSOCIATES, P.C.
*Attorneys for R. Esmerian, Inc. and Ralph Esmerian*
641 Lexington Avenue, 21st Floor
New York, NY  10022
(212) 751-9700

By:___s/_____
          David Wander, Esq. (DW#0145)

THE LAW OFFICES OF AVRUM ROSEN
*Attorneys for the Trustee*
38 New Street
Huntington, New York 11743
 (631) 423-8527


By: ___s/_____
          Avrum J. Rosen, Esq. (AJR#4016)



SHELDON MAY & ASSOCIATES, P.C.

__s/_____
MITCHELL MAY, ESQ.

By: __S/_____

Law Offices of Avrum J. Rosen
Attorneys for Plaintiff Richard E. O'Connell
as Chapter 7 Trustee
(631) 423-8527

UNITED STATES BANKRUPTCY COURT
SOUTHERN  DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                          Chapter 7

NIRAJ CHATURVEDI                                    Case No.: 05-60079
D/B/A GLOBAL GEM TRADERS,

                              Debtor.
-------------------------------------------------------X

### AFFIDAVIT PURSUANT TO S.D.N.Y LOCAL BANKRUPTCY RULE 9077-1

STATE OF NEW YORK        )
                                          )ss.:
COUNTY OF SUFFOLK        )

AVRUM J. ROSEN, being duly sworn, deposes and states:

1.    I am a member of the Law Offices of Avrum J. Rosen, attorneys for Richard E.

        O'Connell, as Chapter 7 Trustee for the above-captioned Debtor (the "Trustee").

2.    I make this Affidavit pursuant to Local Rule 9077-1 for the United States

        Bankruptcy Court for the Southern District of New York in support of the

        Trustee's Order to Show Cause and Application for an order pursuant to Fed. R.

        Bankr. P. 9019(a) and 11 U.S.C. section 105(a) authorizing the parties to enter

        into and approving a settlement and compromise of claim with the Esmerian

        Group including litigation support agreement

3.    On October 26, 2005, an involuntary chapter 7 bankruptcy petition was filed

        against the Debtor on behalf of three creditors of the Debtor, I. Morgenstein, Inc.,

        Hing-Tack Chen and Edward Lee.

4.     On November 4, 2005, the Clerk of the Bankruptcy Court issued a Summons against the Debtor in an involuntary case which was served upon the Debtor on November 4, 2005..

5.     The Debtor did not file an answer to the Summons and on December 1, 2005 an Order for Relief and to file Schedules was entered.

6.     Pursuant to 11 U.S.C. sec. 546(a), the statute of limitations for commencing an action or proceeding under section 544, 545, 547, 548, or 553 of title 11 of the United States Code, is two years after the entry of the order for relief.  Therefore, the deadline for the Trustee to file complaints is December 1, 2007.

7.     The Trustee has conducted a thorough investigation of the facts and circumstances relating to actions that can be brought against Ralph Esmerian and R. Esmerian, Inc. (the "Esmerian Group") and the respective claims that the Esmerian Group can assert against the Estate, and has determined that it is in the best interests of the Estate to settle any potential disputes without commencing an adversary proceeding.

8.     As such, an Order to Show Cause is being brought in an effort to hear and determine, prior to the running of the statute of limitations, whether or not the Court will allow the Trustee to enter into and approve the Settlement Agreement between the Trustee and the Esmerian Group.

9.     In the event that the Court determines that a settlement is not warranted, then the Trustee will be required to commence an adversary proceeding against the Esmerian Group.

10.     The Trustee will also be required to commence any adversary proceedings against

third parties prior to the December 1, 2007 deadline, which pursuant to the terms

of the Settlement Agreement, will be brought by the Trustee with full cooperation

of the Esmerian Group in recovering property of the Estate in which Esmerian

similarly asserts an interest.

11.    Based on the Debtor's Amended Schedules, the Debtor claims a 50% interest in

merchandise that he arranged to be placed on consignment with third parties. In

addition, the Debtor asserts that he obtained financing on behalf of the Esmerian

Group and has a partnership/joint venture arrangement with Ralph Esmerian in

the merchandise.

12.    The Esmerian Group claims that they have a 100% interest in the merchandise

and that the Debtor was merely a middleman. The Settlement Agreement was

prepared to determine the respective interests of the Estate and of the Esmerian

Group in the merchandise to enable the parties to recover a 100% interest in the

merchandise placed on consignment and merchandise given as collateral for

various loans made to the Esmerian Group.

13.    The predicate to commencing the actions to recover the Estate's 100% interest in

the merchandise is the resolution of the issue of ownership and the respective and

otherwise competing claims of the Estate and the Esmerian Group.

14.    For this reason, the Trustee is moving for expedited relief to allow the Trustee to

bring a single action for recovery of the goods on behalf of the Estate. In the

event the Settlement Agreement was not approved, the Esmerian Group would be

required to commence a separate action for recovery of the merchandise in

another forum while the Estate will be required to sue for turnover of the same

merchandise in the bankruptcy court.

15.    No previous request for the same or similar relief has been sought herein.


<u>S/Avrum J. Rosen</u>
Avrum J. Rosen

Sworn to before me this
19th day of November, 2007

<u>S/Fred S. Kantrow</u>
Notary Public, State of New York
No.: 02KA6108402
Qualified in Suffolk County
Commission Expires April 19, 2008

Official Form 17
(12/04)

# United States Bankruptcy Court

## SOUTHERN  District Of  NEW YORK

In re  NIRAJ CHATURVEDI/GLOBAL GEM TRADERS INC
    Debtor

Case No. 05-60079-PCB

Chapter 7

*[Caption as in Form 16A, 16B, or 16D, as appropriate]*

### NOTICE OF APPEAL

*NIRAJ*
*CHATURVEDI/*GLOBAL GEM TRADERS INC, the plaintiff [ *or* defendant *or* other party] appeals under 28 U.S.C.
§ 158(a) or (b) from the judgment, order, or decree of the bankruptcy judge (describe) entered in this adversary
proceeding [*or other proceeding, describe type*] on the ____28_____ day of____11_____ , _2007_ .
                                                                            (month)          (year)

The names of all parties to the judgment, order, or decree appealed from and the names, addresses, and
telephone numbers of their respective attorneys are as follows:

Dated:  12/10/2007

Signed: NIRAJ CHATURVEDI/GLOBAL GEM TRADERS INC
    Attorney for Appellant (or Appellant, if not represented by an Attorney)

Attorney Name: _____

Address: 1136 WEST WALNUT ST, ALLENTOWN , PA-18102

_____

Telephone No:    917 270 3922

If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party has a right to have the
appeal heard by the district court. The appellant may exercise this right only by filing a separate statement of
election at the time of the filing of this notice of appeal. Any other party may elect, within the time provided in 28
U.S.C. § 158(c), to have the appeal heard by the district court.

*If a child support creditor or its representative is the appellant, and if the child support creditor or its representative
files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.*

# C | T | S | W

## COHEN TAUBER SPIEVACK & WAGNER P.C.

Ira R. Abel

direct:  212-381-8725
e-mail:  iabel@ctswlaw.com

February 8, 2008

**BY FAX (212-805-7941)**

Hon. Loretta A. Preska
United States District Judge SDNY
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 1320
New York, NY  10007

Re:  Niraj Chaturvedi *dba Global Gem Traders, Inc.*, Appellant, v.
Richard E O'Connell, Appellee
Bankruptcy Appeal, Civil Case No. 08-cv-00249-LAP
Response to Appellee's Request for Pre-Motion Conference

Dear Judge Preska:

This firm represents Appellant in the above-referenced bankruptcy appeal. As directed by your Honor's Order, entered February 4, 2008, we write on Appellant's behalf in response to Appellee's letter, dated February 1, 2008 (the "Letter Motion") requesting a pre-motion conference pursuant to Rule 2 of your Individual Practices Rules. By the Letter Motion, Appellee seeks leave to file a motion to dismiss the appeal on the grounds that notice thereof was not timely filed, even though the Notice of Appeal was received in the Bankruptcy Court Clerk's office on December 10, 2007, the last day for filing an appeal.

At all times up to and including the filing of the notice of Appeal in this matter, Appellant was a *pro se* litigant, unfamiliar with the procedural intricacies for appeal from the Bankruptcy Court and for after hours filings. He does not and did not have ECF filing privileges. Appellant resides in Allentown, PA, approximately 92 miles from the Bankruptcy Court.

It is undisputed that on December 10, 2007, as a *pro se* litigant, Appellant transmitted the Notice of Appeal by facsimile to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Bankruptcy Court received the Notice of Appeal on that day at 6:47 pm. Record on Appeal document 1 (Bankruptcy Court Docket No. 77). There are no facts

420 Lexington Avenue  |  New York, New York 10170  |  Phone: 212.586.5800  |  Fax: 212.586.5095  |  www.ctswlaw.com

C | T | S | W

Hon. Loretta A. Preska
February 8, 2008
Page 2 of 5

before this Court to suggest that the Bankruptcy Court did not receive the Notice of Appeal on that date.

It is also undisputed that the critical date for finding an appeal to be timely is the date the Notice of Appeal is *received*, not the day that it is filed, as has long been held in the Southern District of New York. *In re Bodine*, 1993 WL 187906 (S.D.N.Y. 1993). The same rule has applied for many years in other jurisdictions. *See also Deyhimy v. Rupp (In re Herwit)*, 970 F.2d 709, n.2 (10th Cir. 1992)("The filing date is the date the notice of appeal is received, not the date it is mailed."); *Robinson v Robinson (In re Robinson)*, 640 F.2d 737, 738 (5th Cir. 1981)(same, under former Bankruptcy Rule 802(a)).

In *Bodine*, appellant, who was represented by counsel, appealed from an order and sent the notice of appeal to the Bankruptcy Court well within the ten-day period required by Rule 8002. The notice was timely delivered to the Bankruptcy clerk's office. However, for unknown reasons, the Notice of Appeal was never docketed.

After the ten-day period had expired, appellant's counsel contacted the Bankruptcy Court clerk's office and discovered that no Notice of Appeal had been docketed. Appellant's counsel then sent another notice of appeal. The second notice was filed outside the ten-day period.

Appellee moved to dismiss the appeal as untimely filed. The *Bodine* Court held, however, that

> [I]n the circumstances of this case, it is unclear whether the Notice of Appeal was "filed" within the meaning of Rule 8002. Although the docket does not reflect the filing of the notice of appeal, it is my understanding that, according to the practices of the Bankruptcy Court, receipt by the Bankruptcy Court clerk's office of a document for filing constitutes "filing," even if, due to some clerical error, the document is lost and is not docketed by the case administrator; in other words, if the party obliged to file submits the document to the clerk's office for filing within the required time, the document is deemed filed even though the clerk's office may fail to stamp it and enter it in the docket.

*Id.* at *1. Pursuant to Bankruptcy Rule 9024, which makes Rule 60 of the Federal Rules of Civil Procedure applicable to title 11 cases, the *Bodine* court "granted leave for the Bankruptcy Court to determine whether . . . . the records of the

C | T | S | W

Hon. Loretta A. Preska
February 8, 2008
Page 3 of 5

Bankruptcy Court should be corrected" to reflect the timely filing of the notice of appeal. *Id.* at *2.

Ignoring such case law and the timely receipt of the Notice of Appeal, Appellee asserts that "On December 11, 2007, Appellant filed the Notice of Appeal." Letter Motion at 1. This is incorrect. Appellant did not file the Notice of Appeal on December 11, 2007 – that is merely the date upon which the clerk of the Bankruptcy Court entered it on the electronic docket. This incorrect factual allegation is the erroneous basis of Appellee's argument for dismissal. (None of Appellee's other allegations – that Appellant did not submit the filing fee timely, that no exigent circumstances existed, that the paid receipt is dated December 11, 2007 – are in any way relevant or jurisdictional.)

Based upon this factual inaccuracy, Appellee relies upon this Court's decision in *Delafield 246 Corp. v. City of New York, et al.*, 07-CV-6238 (LAP), 2007 WL 4103830 at *1 (S.D.N.Y. Nov. 2007) as controlling and requiring dismissal of the appeal. However, *Delafield* is iapplicable to this matter and was based on substantially different facts.

*Delafield 246 Corp.* was represented by counsel with ECF filing privileges. *See* Civil Docket For Case #: 1:07-cv-06238-LAP. This Court found that Delafield filed its notice of appeal on the twelfth day after entry of the order, and after all possible extensions available under Bankruptcy Rule 9006 had expired. *Id.* Filing a Notice of Appeal on the twelfth day after entry of an order as in *Delafield* is substantively different from timely filing a notice of appeal on the tenth day, as appellant did.

Unlike the *Delafield* appellant, Appellant was not represented by counsel when he filed the notice of appeal. He does not have ECF filing privileges. He resides outside this District, in Allentown, PA, making hand delivery of the Notice of Appeal impossible for him.[1] As a *pro se* appellant, he was unaware of the drop box in this Court's lobby, as Appellee cavalierly suggests, Letter Motion at 2,[2] and could hardly be expected to have familiarity with using it to file his Notice of Appeal.

---

[1]  December 10 can therefore be considered to be a day on which "other conditions" have made the clerk's office inaccessible. *See* Bankruptcy Rule 9006(a).

[2]  Appellant misquotes Local Rule 5001-1 to assert that papers requiring a filing fee cannot be deposited in the drop box at the United States District Court. There is no such requirement; the Local Rule set forth on the Bankruptcy Court web site actually states:
    The offices of the Clerk shall be open Monday through Friday, from 8:30 a.m. to 5:00 p.m., except on legal and Court holidays, and shall be closed on Saturdays and

{00021989.DOC; 3}

Hon. Loretta A. Preska
February 8, 2008
Page 4 of 5

C | T | S | W

Appellee relies on *Hotel Syracuse, Inc. v. City Of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 154 B.R. 13 (N.D.N.Y. 1993) for the proposition that facsimile filing is not permitted. That decision, however, turned on a General Order in the Northern District of New York that prohibited facsimile filings. Although Appellee alludes to such a rule in the Southern District of New York, none is cited, presumably because there is no such rule or prohibition. In complete contrast, both Bankruptcy Rule 5001 and Local Bankruptcy Rule 5001 now specifically refer to the "electronic" filing of papers,[3] while the *Hotel Syracuse* Court states that electronic filing is prohibited. *Id.* at 17.

Appellee also cites *One Stop Realtour Place, Inc. v. Allegiance Telecom Liquidating Trust (In re Allegiance Telecom, Inc.)*, 2005 WL 3312248 (S.D.N.Y. 2005) for the proposition that the mailing date of a Notice of Appeal will not control, as opposed to the receipt date. Both the facts and the holding of *One Stop* are irrelevant to the issue before this Court. Appellant here used the only technology at his disposal to assure that the Notice of Appeal was timely

---

Sundays. When the Clerk's office is closed, papers not filed electronically may be filed with the Court by depositing them in the night depository maintained by the District Clerk and are deemed filed as of the date and time stamped thereon. Any required fees for such filings shall be delivered to the Clerk's office no later than noon on the next business day.

Local Bankruptcy Rule 5001-1, entitled Clerk's Office: Hours; After Hours Filing, *available at* http://www.nysb.uscourts.gov/. Notwithstanding the authority in the Local Rule that the Bankruptcy Court is closed on weekends and holidays, the Bankruptcy Court is required to always be open. Bankruptcy Rule 5001(a).

[3] Filing by facsimile is clearly contemplated by the Bankruptcy Rules. Rule 5005, which governs filing of papers, states that "[t]he clerk shall not refuse to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in proper form as required by these rules or any local rules or practices. Rule 5005(a)(1). Moreover, filing by "electronic means" is acceptable:

A court may by local rule permit or require documents to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes. A local rule may require filing by electronic means only if reasonable exceptions are allowed. A document filed by electronic means in compliance with a local rule constitutes a written paper for the purpose of applying these rules, the Federal Rules of Civil Procedure made applicable by these rules, and § 107 of the Code.

Rule 5005(a)(2). The Bankruptcy Court has established a procedure for filing documents by electronic means. General Order M-242: Revised Electronic Means for Filing, Signing and Verification of Documents. In that Order, among other things "electronic files" consist of "the images of documents filed in cases or proceedings and documents filed by electronic means." *Id.* at ¶ 2. A fax is an image of a document. Telefacsimile transmission over a telephone line is clearly electronic.

{00021989.DOC; 3}

C | T | S | W

received, which it was.  Appellant is more than willing to accept the *One Stop* holding, because the receipt date is timely.

For all of these reasons, Appellee's Letter Mmotion to dismiss the appeal should be denied.

Respectfully yours,
COHEN TAUBER SPIEVACK & WAGNER P.C.


By:_____
                               Ira R. Abel


CC:  Deborah L. Dobbin Esq. (By Fax)

{00021989.DOC; 3}

**PSC 2000 Series 2410**
**Personal Printer/Fax/Copier/Scanner**

Log for
Nirvana Intl Inc
12127899001
Dec 10 2007 6:48PM

<u>Last Transaction</u>

| <u>Date</u> | <u>Time</u> | <u>Type</u> | <u>Identification</u> | <u>Duration</u> | <u>Pages</u> | <u>Result</u> |
|------|------|------|------|------|------|------|
| Dec 10 | 6:47PM | Fax Sent | 12126682878 | 0:35 | 1 | OK |